Jacques L. Ach and Ruth H. Ach v. Commissioner.
Ach v. Commissioner
Docket No. 49498.
United States Tax Court
T.C. Memo 1954-244; 1954 Tax Ct. Memo LEXIS 3; 13 T.C.M. (CCH) 1225; T.C.M. (RIA) 54349; December 31, 1954, Filed *3 Respondent's disallowance of deductions for alleged depreciation or amortization of a certain contract sustained. Leo Weinberger, Esq., Fountain Square Building, Cincinnati, Ohio, for the petitioners. Alvin J. Ivers, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: Petitioners are husband and wife who lived and filed their income tax returns in Cincinnati, Ohio. Hereinafter Jacques L. Ach is referred to as petitioner. The case was submitted on the following stipulation of facts, together with one exhibit: Respondent has determined a deficiency in petitioners' income taxes for the calendar year 1951 in the amount of $523.06. The entire amount of the deficiency is in controversy and depends on the interpretation of a contract under date of November 30, 1948, between petitioner and one Theodore E. Jentelson. Under the terms of the contract, petitioner acquired Jentelson's practice of accounting, the good will thereof, the use of Jentelson's name for a five-year period, Jentelson's agreement not to compete for a period of 61 months within Hamilton County, Ohio, Montgomery County, Ohio, or within 60 miles of Cincinnati, and Jentelson's *4 agreement never to accept any accounting business from specific clients listed on Schedule B of the contract. With certain specified exceptions, fees earned from Jentelson's practice after December 1, 1948, were to belong to petitioner; fees earned before December 1, 1948, and unpaid at that date were to be collected by petitioner and remitted to Jentelson. Jentelson further agreed, for a two-week period, to introduce petitioner to the clients listed on Schedule B of the contract as his partner or successor and to assist petitioner in retaining such clients. Furniture, fixtures, equipment, and professional library belonging to Jentelson were not transferred by the contract, but working papers, correspondence, copies of reports, copies of tax returns, and similar documents pertaining to clients listed on Schedule B of the contract were so transferred. Petitioner agreed to pay Jentelson a flat price of $9,600 in installments, and, in addition, certain percentages of the fees received from clients on the list for a five-year period. Neither the flat price of $9,600 nor the percentage payments was allocated among the several rights transferred under the contract. On December 1, 1948, petitioner *5 entered into a partnership with Harry Sonkin, a former partner of Jentelson's, to engage in the practice of accountancy under the name and style of "Jentelson, Sonkin and Ach." On the books of this partnership petitioner was credited with "good will" in the amount of $9,600. The contract with Jentelson was not assigned to this partnership. Petitioner's liability to Jentelson was not reflected on these books. This partnership was dissolved on January 31, 1950, although it ceased active operations on October 31, 1949, when Harry Sonkin moved to another location. From September 1930 to November 30, 1948, petitioner was engaged in the general practice of law under his own name, except for the period from September 1942 to December 1945, when he was in military service. From January 1942 until November 30, 1948, and from November 1, 1949 to the present time, petitioner has been engaged in the practice of accounting as a certified public accountant under his own name, except for the period of his military service. Petitioner abandoned the use of Jentelson's name on November 1, 1949, and thereafter continued his own practice under the name of Jacques L. Ach and Company. From time to *6 time from November 30, 1948 to date, Jentelson consulted with petitioner, and, on several occasions, with his former clients in an effort to retain them for petitioner. "Good will" in the amount of $9,600 was set up on petitioner's books at November 1, 1949 with credits reflecting the liability to Jentelson and to Capital. Each year petitioner's books have reflected a charge to "amortization of contracts" in the amount of $1,920 with a corresponding credit to "good will". In addition, during the taxable year 1950, a charge of $1,920 for amortization of contracts was made by petitioner as a deduction from his distributive share of the taxable income of the Jentelson, Sonkin and Ach partnership for its fiscal year ended January 31, 1950. Liabilities to Jentelson for the percentages of fees payable under the contract have been reflected on petitioner's books by a charge to "commissions". During the taxable year here involved, calendar year 1951, petitioners claimed as a deduction from gross income the amount of $1,920 as "amortization of contracts". Petitioners also claimed the amount $324of for "commissions" covering the liability to Jentelson incurred during 1951, representing the *7 percentage of fees payable under the contract. These two deductions totaling $2,244 were disallowed by the Commissioner in the determination of the asserted deficiency. Of the 31 clients listed on Schedule B of the contract, Jentelson was serving 23 of them as of November 30, 1948, four were prospective clients, one was a new client, and three were former clients. Jentelson estimated the total annual fees from the 23 clients being serevd by Jentelson as approximately $13,000. During the calendar year 1949 petitioner served 21 of the clients listed on Schedule B of the contract. During the taxable year here involved, the calendar year 1951, petitioner served 15 of the clients listed on Schedule B of the contract, deriving approximately $10,000 in fees during 1951. On the above set of facts, petitioner states the issues to be determined, as follows: 1. Are the rights acquired by petitioner by reason of his contract with Jentelson subject to depreciation? 2. Are the percentage payments to Jentelson deductible as "ordinary and necessary business expenses"? Petitioner asks approval of the deductions for the following reasons: In spite of the rather loose use of the term *8 in the contract, no good will was in fact transferred by the contract. The rights acquired by petitioner had a definite basis set forth in the contract. The life of those rights was of limited duration, which duration was readily determinable. The percentage payments to Jentelson were intended to and in fact did obtain personal services from Jentelson. Respondent states the issue as follows: Are the petitioners entitled to a deduction for depreciation (or amortization) of the non-allocated purchase price paid by the petitioner-husband for an accounting practice, as to which the seller covenants never to compete, under the provisions of section 23(1) or any other section of the Internal Revenue Code of 1939? Respondent contends that - No portion of the total contract price is allocable to a depreciable (or amortizable) asset. The rights acquired by the petitioner-husband have an indefinite life, and are, therefore, not depreciable or amortizable. The five-year restrictive covenant is superfluous and valueless. The five-year restrictive covenant is primarily to assure the petitioner-husband of his enjoyment of the other rights acquired under the contract. In our *9 opinion, the respondent has all the better of the argument. The stipulated facts afford no basis for petitioners' position and the provisions of the contract foreclose approval of the interpretation asked. It is clear to us that among the intangibles transferred by the contract was a substantial amount of good will. However, it is impossible to segregate or allocate the consideration paid or to be paid to any specific element. That good will is not subject to depreciation or amortization was one of the early conclusions laid down in applying the income tax law. , certiorari denied . Since the element of good will is a component part and since it cannot be segregated or allocated, no depreciation of the amount, value, or duration of any other element is possible. In short, petitioner faces an imponderable, incapable of solution. (June 9, 1954). To labor the question further would be purposeless. We approve respondent's determination *10 as to depreciation or amortization of the contract. As to the second point raised by petitioners, there is a failure of proof. As admitted by counsel for petitioners, on brief, the contract is silent on compensation for services. Nor is there any testimony or stipulated fact establishing the same. Such an allowance is not inferable from the contract or from the record before us. On this issue also the petitioners must fail. Decision will be entered for the respondent.